UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEREMY SCHUH,

    Plaintiff,      CIVIL ACTION NO. 08-10482

  v.         DISTRICT JUDGE AVERN COHN

RODNEY POLLARD, WESLEY  MAGISTRATE JUDGE VIRGINIA MORGAN
PRATER, DANIEL MINZEY,
DAVID SCOTT SWARTZ,
PATRICK BERGETT, RUSS
CILIBRAISE, PATRICK A.
HUGHES, SHEILA BLAKNEY,
KUNATH, GINA JACOBS, LAURA
M. GRAHAM, DIANNA COLLINS,
and RIBITSCHUN,

    Defendants.[1]

            /


## REPORT AND RECOMMENDATION

### I.  Introduction

   This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived

plaintiff of his rights under the United States Constitution.  The matter comes before the court on

defendant Collins' Motion to Dismiss (D/E #27), defendants Ribitschun, Pollard, Cilibraise, and

---

   [1]In their motions to dismiss or for summary judgment (D/E #30, #54), defendants Bergett
and Ribitschun identify themselves as "Burgett" and "Rubitschun" respectively.  However,
because there have been no motions to change the caption, this court will use the names for those
defendants found in the complaint and docket sheet.

Hughes' Motion to Dismiss and/or for Summary Judgment (D/E #30), defendants Blakney, Kunath, Jacobs, Graham, Prayter, Minzey, and Swartz's Motion to Dismiss (D/E #31), and defendant Bergett's Motion for Summary Judgment (D/E #54).  For the reasons stated below, this court recommends that all of defendants' motions be **GRANTED** and that this case be dismissed.

With respect to the arguments for dismissal, this court specifically finds that (1) all of plaintiff's claims are barred by the applicable statute of limitations except for plaintiff's claims that Cilibraise violated plaintiff's constitutional rights on September 20, 2007, by refusing to take administrative action against Pollard and Hughes, Swartz violated plaintiff's constitutional rights on September 25, 2007, by denying plaintiff the right to attend a hearing on a motion for discovery, and Bergett violated plaintiff's constitutional rights by failing to respond to plaintiff's September 26, 2007 letter requesting that Bergett taken administrative action against Pollard and Hughes; (2) Collins is entitled to prosecutorial immunity; (3) plaintiff's complaint satisfies the requirements of Fed. R. Civ. P. 8(a)(2); (4) Ribitschun and Cilibraise are entitled to Eleventh Amendment immunity with respect to the claims against them in their official capacities; (5) Swartz is entitled to judicial immunity; (6) Jacobs and Graham are not entitled to immunity because they are public defenders; (7) Pollard and Hughes are entitled to quasi-judicial immunity; (8) Cilibraise, Ribitschun, Minzey, and Blakney are entitled to qualified immunity; and (9) except for plaintiff's allegations against Pollard and Hughes arising from the issuance of the June 25, 2004 warrant, his claims are improperly challenging the fact or duration of his confinement.

With respect to the arguments regarding summary judgment, this court specifically finds that (1) Pollard, Hughes, Cilibraise and Ribitschun are entitled to summary judgment as to plaintiff's conspiracy claim and (2) Bergett is entitled to summary judgment as to all claims against him.

## II.  Background

### A. Complaint

On February 1, 2008, plaintiff filed the complaint against defendants in this matter (D/E #1).  According to that complaint, plaintiff was arraigned for a violation of probation on June 4, 2004 and, during that arraignment, plaintiff pled guilty.  Plaintiff also asserts that he was immediately sentenced to one year incarceration in the Washtenaw County Jail, with credit for time served and only eleven days left to be served.  Plaintiff was also given the added condition of ninety days tether and defendant Pollard[2] was assigned as plaintiff's probation officer. (Complaint, ¶¶ 3-4)

Plaintiff also alleges that he was released from jail on June 16, 2004, and that, before he was released, plaintiff was warned by a Sergeant Mellberg that plaintiff had made enemies in Washtenaw County by filing a complaint over an alleged assault of plaintiff by a Deputy named Alexander on April 1, 2003.  (Complaint, ¶ 6)  Plaintiff further alleges that, after his release, he went to the probation department and met with Pollard to go over the terms of his probation. During that time, plaintiff informed Pollard that plaintiff intended to pursue litigation against

_____

[2]According to the complaint, Pollard is a Probation Agent and plaintiff is suing him in his personal capacity.  (Complaint, p. 1)

Alexander.  (Complaint, ¶ 7-9)  Plaintiff also alleges that, while he was exiting the probation office, defendant Kunath[3] told plaintiff that Kunath would see what he could do about plaintiff staying out of jail, which plaintiff took as a threat.  (Complaint, ¶ 10)

The complaint also states that Pollard installed the tether equipment at plaintiff's parents' residence, where plaintiff was staying, and that defendant Swartz[4] signed the written order amending plaintiff's probation.  (Complaint, ¶¶ 11-12)  The complaint further states that plaintiff went to the emergency room on June 23, 2004, and that he called Pollard several times and left several messages regarding that hospital visit.  (Complaint, ¶¶ 13-17)  Plaintiff asserts that, on June 24, 2004, he spoke with Pollard on the phone and Pollard indicated that Pollard had received plaintiff's messages, he understood plaintiff's situation, and that plaintiff's probation was fine.  (Complaint, ¶ 18)  Plaintiff further asserts that on June 25, 2004, Pollard submitted a petition, affidavit, and bench warrant request to Swartz that stated that plaintiff left his residence on June 23rd without permission.  Swartz signed and approved the bench warrant.  (Complaint, ¶ 19-20)

According to plaintiff, he was in constant contact with Pollard from June 24, 2004, through July 13, 2004, including two visits to the probation office, but Pollard never mentioned the bench warrant and instead led plaintiff to believe that everything was fine.  (Complaint, ¶ 21)

_____

[3]According to the complaint, Kunath is a Sergeant in the Washtenaw County Sheriff's Department and plaintiff is suing him in his personal and official capacities.  (Complaint, p. 6)

[4]According to the complaint, Swartz is a Judge in the 22nd Circuit Court of Washtenaw County and plaintiff is suing him in his personal capacity.  (Complaint, p. 4)

Plaintiff also alleges that he was attempting to pursue his assault complaint against Alexander during that time period, but a number of Washtenaw County officials, including defendant Minzey,[5] refused to see him.  (Complaint, ¶ 23)  Plaintiff further alleges that he called the governor's office as part of his attempt to pursue an assault complaint against Alexander, and that an administrative assistant in the governor's office gave him defendant Prayter's[6] home phone number and told plaintiff to call Prayter.  (Complaint, ¶¶ 26-27)

According to plaintiff, at his scheduled visit to the probation office on July 13, 2004, Pollard had plaintiff taken into custody for violating plaintiff's probation.  (Complaint, ¶ 29-30)  Plaintiff was arraigned that day before a Judge Shelton and a hearing was scheduled for July 15, 2004, before Swartz.  (Complaint, ¶ 32)  Plaintiff alleges that Pollard visited plaintiff on July 15, 2004, prior to a the hearing before Swartz, and indicated that he would request that plaintiff be released on personal bond if plaintiff kept his mouth shut.  (Complaint, ¶ 42)  At the hearing, plaintiff was granted a personal bond by Swartz and a hearing was set for July 22, 2004.  (Complaint, ¶ 43)

Plaintiff states in his complaint that he spoke to Prayter about plaintiff's complaint against Alexander several times between July 16, 2004, and July 22, 2004, and that, while Prayter initially indicated that he would help, Prayter ultimately told plaintiff that he could not help because Prayter was part of the conspiracy to cover up the assault.  (Complaint, ¶ 44-47)

---

[5]According to the complaint, Minzey is the Sheriff of Washtenaw County and plaintiff is suing him in his personal and official capacities.  (Complaint, p. 4)

[6]According to the complaint, Prayter is the County Commissioner for Washtenaw County and plaintiff is suing him in his personal and official capacities.  (Complaint, p. 4)

According to plaintiff's complaint, at the hearing on July 22, 2004, while Swartz stated a prejudice and preconceived notion of guilt with respect to plaintiff, Swartz still deemed plaintiff not guilty of the violation of probation after catching Pollard lying.  (Complaint, ¶¶ 48-49)  The complaint also states that Swartz told plaintiff that he would give plaintiff until August 5, 2004, to be tethered at a residence other than plaintiff's parents' residence and that plaintiff's probation could and would be transferred outside of Washtenaw County.  (Complaint, ¶ 49)  The complaint further states that Swartz "postponed [plaintiff's] sentencing date for the violation [plaintiff] was deemed not guilty of until August 5th, 2004, which is in clear violation of [plaintiff's] clearly established Due Process and Double Jeopardy rights[.]"  (Complaint, ¶ 49)

Plaintiff alleges that he secured residency with a family friend in Canton, but that Pollard repeatedly refused to take plaintiff's numerous phone calls about plaintiff's new residence.  (Complaint, ¶ 50-54)  Plaintiff also alleges that he called defendant Hughes,[7] who was Pollard's supervisor, several times in an attempt to speak to Pollard.  (Complaint, ¶¶ 54, 56-57)  Plaintiff further alleges that he was only able to speak with Pollard on August 5, 2004, after calling Hughes, confirming that Pollard was at work, calling Pollard, getting no answer, recalling Hughes, and getting Hughes to tell Pollard to answer the phone.  (Complaint, ¶ 59)  When plaintiff finally got Pollard on the phone, Pollard spoke with the family friend plaintiff was living with and confirmed that plaintiff had moved.  Pollard also told plaintiff that plaintiff still had to come to court later that day.  (Complaint, ¶¶ 60-62)

_____

[7]According to the complaint, Hughes is the Probation Administrator for Field Operations Administration of the MDOC and plaintiff is suing him in his personal and official capacities. (Complaint, p. 6)

Plaintiff asserts that, Pollard lied at the hearing on August 5, 2004, by telling Swartz that plaintiff was not on tether and did not have a residence to tether to.  (Complaint, ¶ 63)  Plaintiff also asserts that Swartz was unwilling to listen to reason and stated that plaintiff was going to be taken into custody for both a felony warrant issued for plaintiff on June 4, 2004, and the violation of probation plaintiff had previously been found not guilty of.  (Complaint, ¶ 63)  Swartz also set plaintiff sentencing for August 26, 2004, and told Pollard to prepare a supplemental report.  (Complaint, ¶ 63)  Plaintiff further asserts that defendant Graham,[8] plaintiff's public defender, never objected to the misconduct and instead participated in that violation of plaintiff's rights.  (Complaint, ¶ 63)  Plaintiff claims that he continuously called Graham from August 6, 2004, to August 25, 2004, but she never answered her phone, plaintiff could only leave messages, and Graham never contacted plaintiff.  (Complaint, ¶¶ 66, 69)

According to plaintiff, when he was taken to the Washtenaw County Jail on August 5, 2004, he was given was given a list of the rules enforced by Minzey and that, as part of that list, there was a rule that any inmate represented by legal counsel could not use the jail's law library.  (Complaint, ¶ 64)  Plaintiff claims that, because of Graham's inadequate representation, he requested access to the law library on numerous occasions, but he requests were always denied on the basis of the jail's policy.  (Complaint, ¶¶ 70, 82)

Plaintiff also claims that Pollard entered a slanderous pre-sentence investigation report on August 17, 2004, and that Hughes approved that slanderous report.  (Complaint, ¶ 68)

---

[8]According to the complaint, Graham is an Assistant Public Defender for Washtenaw County and plaintiff is suing her in her personal capacity.  (Complaint, p. 6)

Plaintiff further claims that, on August 24, 2004, he wrote a letter to defendant Blakney,[9] Graham's direct supervisor, because plaintiff felt that Graham was intentionally providing ineffective assistance of counsel.  (Complaint, ¶ 71)

According to the complaint, there was a hearing on August 26, 2004, before Swartz at which plaintiff was represented by Graham and defendant Jacobs,[10] and defendant Collins[11] was the prosecuting attorney.  (Complaint, ¶ 72)  The complaint also states that the attorneys and the judge held a conversation off the record and the matter was adjourned because Pollard did not have the necessary paperwork.  (Complaint, ¶ 72)  The complaint further states that Jacobs raised the issue of bond, but Collins maliciously sided with Pollard in reckless disregard for the truth and Swartz set the bond at $50,000.  (Complaint, ¶ 72)  The complaint also states that Graham, Collins, and Jacob's failure to object to the misconduct shows their active participation in the conspiracy to violate plaintiff's clearly established rights.  (Complaint, ¶ 72)

Plaintiff alleges that, on August 26, 2004, he wrote another letter to Blakney discussing Graham's intentional ineffective assistance of counsel and that Blakney received the letter on September 1, 2004.  (Complaint, ¶ 73)

---

[9]According to the complaint, Blakney is the Senior Assistant Public Defender for Washtenaw County and plaintiff is suing her in her personal capacity.  (Complaint, p. 6)

[10]According to the complaint, Jacobs is an Assistant Public Defender for Washtenaw County and plaintiff is suing her in her personal capacity.  (Complaint, p. 6)

[11]According to the complaint, Collins is an Assistant Prosecuting Attorney for Washtenaw County and plaintiff is suing her in her personal capacity.  (Complaint, p. 7)

Plaintiff also alleges that, on August 30, 2004, Pollard submitted another petition, affidavit and request for a bench warrant in reckless disregard for the truth, and that Hughes approved the warrant request prior to it being submitted to the court.  (Complaint, ¶ 75)

Plaintiff further alleges that Swartz signed that warrant request on August 31, 2004. (Complaint, ¶ 76)  According to the complaint, that request and approval establishes that plaintiff was being secretly confined and/or unlawfully imprisoned from August 6 to August 31, 2004, and that Pollard, Swartz, Graham, Jacobs, and Collins were part of the conspiracy to imprison plaintiff.  (Complaint, ¶ 76)

According to the complaint, there was a hearing on September 16, 2004, before Swartz at which plaintiff was represented by Graham and Jacobs, and Collins was the prosecuting attorney.  (Complaint, ¶ 79)  The complaint also states that the attorneys and the judge held a conversation off the record and the matter was adjourned until November 18, 2004.  (Complaint, ¶ 79)

Plaintiff claims that, on November 2, 2004, he wrote a letter to Powell, the Chief Public Defender for Washtenaw County, regarding Graham's performance because plaintiff never received any response from the letters he wrote to Blakney.  (Complaint, ¶ 80)  Plaintiff also claims that he received a letter from Blakney on November 18, 2004, and that letter stated Graham was under her direct supervision and providing effective representation.  (Complaint, ¶ 81)

Plaintiff further claims that, on December 3, 2004, and December 8, 2004, Pollard entered slanderous pre-sentence investigation reports in reckless and intentional disregard to the truth and that Hughes directly approved both reports.  (Complaint, ¶¶ 83-84)

According to the complaint, on December 16, 2004, plaintiff "was placed at the Legal disability of imprisonment as an active step by the named Defendant(s), to prevent and hinder [plaintiff] from filing and seeking litigation against Washtenaw County for the 2003 attack on [plaintiff]."  (Complaint, ¶ 85)

Plaintiff asserts that he filed Attorney Grievance Commission grievances against Powell and Graham in 2006, but they were dismissed due to plaintiff's lack of knowledge about legal rules and the law.  (Complaint, ¶ 89-90)  Plaintiff also asserts that he filed a request for investigation of Swartz's misconduct with the Judicial Tenure Commission, but the request was denied on December 12, 2006, due to plaintiff's lack of knowledge of the law and legal procedures.  (Complaint, ¶ 91)  Plaintiff further asserts that he filed a request for assistance and an Administrative Complaint with the MDOC Director over Pollard and Hughes' misconduct on August 27, 2007.  (Complaint, ¶ 96)  According to the complaint, defendant Cilibraise[12] responded to that letter on behalf of defendant Ribitschun[13] on September 20, 2007 and, in that

---

[12]According to the complaint, Cilibraise is an Administrative Assistant in the Field Operations Administration of MDOC and plaintiff is suing him in his personal and official capacities.  (Complaint, p. 5)

[13]According to the complaint, Ribitschun is the head of the Field Operations Administration of MDOC and plaintiff is suing him in his official capacity.  (Complaint, p. 5) Additionally, this court allowed plaintiff to later amend his complaint to state a claim against Ribitschun in Ribitschun's individual capacity as well.

letter, Cilibraise wrote that he worked for Ribitschun and that no administrative action would be taken against Pollard or Hughes.  (Complaint, ¶ 98)

Plaintiff also claims that, on September 25, 2007, Swartz denied plaintiff the right to attend a hearing on plaintiff's motion for discovery.  (Complaint, ¶¶ 101-102)

Plaintiff further claims that, on September 26, 2007, he sent a letter to defendant Bergett[14] requesting that Bergett take administrative action against Pollard and Hughes.  (Complaint, ¶ 100)  According to the complaint, plaintiff has not yet received a reply to that letter and Bergett's failure to respond establishes his part in the conspiracy against plaintiff.  (Complaint, ¶ 100)

As relief, plaintiff seeks, among other things: a declaratory judgment, injunctive relief, punitive damages, compensatory damages, fees and costs, and any further necessary relief. (Complaint, pp. 8-9)

### B. Motions Before the Court

### 1.  Defendant Collins' Motion to Dismiss

On October 21, 2008, defendant Collins filed, in lieu of an answer, a motion for judgment of dismissal on the pleadings (D/E #27).  In that motion, Collins argues that she has absolute immunity from suit for any actions she took as an assistant prosecuting attorney.  Collins also argues that, even if she does not have immunity, plaintiff failed to state a claim upon which relief can be granted, and his action is barred by the applicable statute of limitations.

---

[14]According to the complaint, Bergett is the Probation Department Director in the Field Operations Administration of MDOC and plaintiff is suing him in his personal and official capacities.  (Complaint, p. 5)

On January 14, 2009, plaintiff filed a response to Collins' motion to dismiss (D/E #50).[15] In that response, plaintiff argues that Collins is not entitled to absolute immunity because her actions were taken prior to a determination regarding probable cause and because her actions were not performed as part of her role as an advocate.  Plaintiff also argues that the statute of limitations only starts to run when plaintiff know or has reason to know about his claims, and plaintiff did not learn about his claims until 2007 because of defendants' fraudulent concealment.

### 2.  Defendants Ribitschun, Pollard, Cilibraise, and Hughes' Motion to Dismiss and/or for Summary Judgment.

On October 22, 2008, defendants Ribitschun, Pollard, Cilibraise, and Hughes filed a Motion to Dismiss and/or for Summary Judgment (D/E #30).  In that motion, those defendants argue that plaintiff failed to state a claim because he did not allege any specific violations of his constitutional rights, plaintiff is challenging the validity of his imprisonment, and plaintiff failed to allege any act by the defendants that was either unlawful or accomplished by unlawful means. Defendants also argue that plaintiff's claim is barred by the applicable statute of limitations. Defendants further argue that they are all entitled to qualified immunity, Cilibraise and Ribitschun are entitled to Eleventh Amendment immunity, and Pollard and Hughes are entitled to Parole/Probation officer immunity.  Lastly, defendants argue that plaintiff's complaint should be stricken because it fails to comply with Fed. R. Civ. P.  8 by being over ninety pages long and containing over one hundred and fifty pages of additional documents.

_____

[15]Plaintiff was granted an extension of time to file a response to Collins' motion (D/E #46)

On March 26, 2009, plaintiff filed a response to defendants Ribitschun, Pollard, Cilibraise, and Hughes' motion (D/E #59).[16]  In that response, plaintiff argues that he clearly alleged claims of retaliation, abuse of process, false arrest, malicious prosecution, and violation of his due process rights.  Plaintiff also argues that he is not challenging the validity of his sentence and that the statute of limitations should be equitably tolled given defendants' actions. Plaintiff further argues that his allegations and evidence demonstrate a direct causal link between the actions of the defendants and that there was a conspiracy against plaintiff.  Plaintiff does however, concede that the claims against Cilibraise and Ribitschun in their official capacities are barred by those defendants' Eleventh Amendment Immunity.

### 3.  Defendants Blakney, Kunath, Jacobs, Graham, Prayter, Minzey, and Swartz's Motion to Dismiss

On October 22, 2008, defendants Blakney, Kunath, Jacobs, Graham, Prayter, Minzey, and Swartz filed a motion to dismiss (D/E #31).  In that motion, those defendants argue that plaintiff's claims are barred by the three-year statute of limitations.  Defendants also argue that plaintiff has no allegations against Minzey and respondeat superior is not a viable claim against any supervisors in this case.  Defendants further argue that Swartz, Jacobs, and Graham are entitled to absolute immunity.

---

[16]Plaintiff's response to Ribitschun, Pollard, Cilibraise, and Hughes' motion was untimely, but plaintiff filed a Motion to Consider Late Response (D/E #58) that this court granted.

-13-

On January 14, 2009, plaintiff filed a response to defendants Blakney, Kunath, Jacobs, Graham, Prayter, Minzey and Swartz's motion (D/E #51).[17]  In that response, plaintiff argues that the statute of limitations should be tolled because of defendants' fraudulent concealment of plaintiff's claims.  Plaintiff also argues that Swartz was not performing judicial acts when he had plaintiff arrested, Jacobs and Graham intentionally provided ineffective assistance of counsel while also concealing the denial of plaintiff's rights, Minzey was sufficiently involved in the conspiracy to be culpable, and Blakney threatened plaintiff into keeping Graham as plaintiff's attorney.

On January 21, 2009, defendants Blakney, Kunath, Jacobs, Graham, Prayter, Minzey and Swartz filed a reply to plaintiff's response to their motion to dismiss (D/E #53).  In that reply, defendants argue that plaintiff did allege an improper respondeat superior theory of liability, plaintiff was not arrested by Swartz, and plaintiff failed to allege sufficient personal involvement by a number of defendants to show that they were part of any conspiracy.  Defendants also argued that the statute of limitations should not be tolled.

On February 17, 2009, plaintiff filed a response to defendants' reply (D/E #56).  In that response, plaintiff argues that he did not become aware of his claims until 2007 because of defendants' actions and that Blakney was part of the conspiracy by failing to remedy other defendants' actions.

### 4. Defendant Bergett's Motion for Summary Judgment

---

[17]Plaintiff was granted an extension of time to file a response to Blakney, Kunath, Jacobs, Graham, Prayter, Minzey and Swartz's motion (D/E #46).

On January 29, 2009, defendant Bergett filed a motion for summary judgment (D/E #54). In that motion, Bergett argues that there is no genuine issue of material fact as to whether Bergett was personally involved in the matters alleged in the complaint and Bergett is entitled to judgment as a matter of law.

Plaintiff filed a response to Bergett's motion for summary judgment on March 26, 2009 (D/E #59).[18]  In that response, plaintiff states that he will accept that Bergett was retired at the time plaintiff sent him a letter if Bergett provides proof.

## III.  Discussion

### A. Dismissal

### 1. Standard of Review

All of the defendant except for Bergett move for dismissal of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, "factual allegations contained in a complaint must raise a right to relief above the speculative level"  Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted).  That does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  See also CBC Companies, Inc. v. Equifax, Inc., 561 F.3d 569, 571 (6th Cir. 2009).  In its review, the court must

---

[18]Plaintiff's response to Bergett's motion was untimely, but plaintiff filed a Motion to Consider Late Response (D/E #58) that this court granted.

construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.  Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  Bassett, 528 F.3d at 430.

### 2. Statute of Limitations

All of defendants' motions except for Bergett's motion for summary judgment raise arguments based on the statute of limitations for plaintiff's claims.  Since Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought."  Banks v. City of Whitehall, 344 F.3d 550, 553 (6th Cir. 2003) (citing Wilson v. Garcia, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)).  The Sixth Circuit has held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims. Chippewa Trading Co. v. Cox, 365 F.3d 538, 543 (6th Cir. 2004); M.C.L. § 600.5805(10).

In this case, plaintiff filed his complaint against defendants on February 1, 2008 (D/E #1) and, unless the statute of limitations was tolled, plaintiff can therefore only bring claims arising from events that occurred after February 1, 2005.  In plaintiff's complaint, the only claims that arose after that date are plaintiff's claims that Cilibraise violated plaintiff's constitutional rights

-16-

on September 20, 2007, by refusing to take administrative action against Pollard and Hughes,

Swartz violated plaintiff's constitutional rights on September 25, 2007, by denying plaintiff the

right to attend a hearing on a motion for discovery, and Bergett violated plaintiff's constitutional

rights by failing to respond to plaintiff's September 26, 2007 letter requesting that Bergett taken

administrative action against Pollard and Hughes.

Plaintiff does not dispute those dates or the fact that some of his claims fall outside the

applicable statute of limitations.  Rather, plaintiff asserts that the statutes of limitations should be

tolled or extended because of the fraudulent concealment of plaintiff's claims by defendants.

State law tolling principles apply to determine the timeliness of § 1983 civil rights claims,

Wilson, 471 U.S. at 268-69, 105 S.Ct. 1938, and M.C.L. § 600.5855 does extend the time for a

plaintiff to file a claim person who is or may be liable for any claim fraudulently conceals the

existence of the claim or the identity of any person who is liable for the claim from the

knowledge of the person entitled to sue on the claim.[19]  "Although state law provides the statute

of limitations to be applied in a § 1983 damages action, federal law governs the question of *when*

that limitations period begins to run."  Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984)

(emphasis added); see also Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2003).  As a general

rule, a cause of action "accrues" and the statute of limitations thereon begins to run when a

---

[19]M.C.L. § 600.5855 provides: "If a person who is or may be liable for any claim
fraudulently conceals the existence of the claim or the identity of any person who is liable for the
claim from the knowledge of the person entitled to sue on the claim, the action may be
commenced at any time within 2 years after the person who is entitled to bring the action
discovers, or should have discovered, the existence of the claim or the identity of the person who
is liable for the claim, although the action would otherwise be barred by the period of
limitations."

-17-

plaintiff knows, or has reason to know through the exercise of reasonable diligence, of the injury

that provides the basis for the claim.  Kelly v. Burks, 415 F.3d 558, 561 (6th Cir. 2005);

Friedman v. Estate of Presser, 929 F.2d 1151, 1159 (6th Cir. 1991).

Here, beyond alleging in his complaint that defendants violated his constitutional rights

and asserting in responses that defendants fraudulently concealed his claims, plaintiff does not

identify how any defendant concealed claims from plaintiff.  As discussed above, a cause of

action generally accrues when a plaintiff knows, or has reason to know through the exercise of

reasonable diligence, of the injury that provides the basis for the claim.  Kelly, 415 F.3d at 561;

Friedman, 929 F.2d at 1159.  Here, plaintiff always knew of his injuries as soon as they

happened, and he offers no basis for tolling the statute of limitations pursuant to M.C.L. §

600.5855.  At most, plaintiff argues in just one of his responses that:

> The reason it so long for the Plaintiff to discover his injuries, is
> due to the latent nature of said, and the Defendants' intentional
> fraudulent concealment of said claims by wrongfully sending the
> Plaintiff to prison, thus placing him at a legal disability so he
> would <u>not</u> discover said injuries until its too late.  [D/E #51, p. 27
> (emphasis in original)][20]

However, while plaintiff specifically argues that defendants sending him to prison constituted

fraudulent concealment of his claims, imprisonment does not affect statutes of limitations under

Michigan law.  At one time, Michigan law did provide that statutes of limitations were tolled

while a plaintiff was in prison, in the same way that insanity and infancy tolled statutes of

---

[20]Plaintiff also alleged in his complaint that, on December 16, 2004, plaintiff "was placed
at the Legal disability of imprisonment as an active step by the named Defendant(s), to prevent
and hinder [plaintiff] from filing and seeking litigation against Washtenaw County for the 2003
attack on [plaintiff.]"  (Complaint, ¶ 85)

limitations, but that disability of imprisonment was abolished by 1993 PA 78, § 1.  See M.C.L. 600.5851(9), (10); Johnson v. Marks, 224 Mich. App. 356, 357-358 (1997); Fante v. Stepek, 219 Mich. App. 319, 323 n 1 (1996).  The effective date of the amendment was April 1, 1994. Johnson, 224 Mich. App. at 358.[21]  Given that Michigan law expressly excludes imprisonment as a basis for tolling statutes of limitations, plaintiff's argument that defendants fraudulently concealed his claims by sending him to prison must be rejected.

Therefore, in light of the dates alleged in plaintiff's complaint and the applicable statute of limitations, all of plaintiff's claims are time-barred and should be dismissed except for plaintiff's claims that Cilibraise violated plaintiff's constitutional rights on September 20, 2007, by refusing to take administrative action against Pollard and Hughes, Swartz violated plaintiff's constitutional rights on September 25, 2007, by denying plaintiff the right to attend a hearing on a motion for discovery, and Bergett violated plaintiff's constitutional rights by failing to respond to plaintiff's September 26, 2007 letter requesting that Bergett taken administrative action against Pollard and Hughes.

---

[21]M.C.L. § 600.5801 did provide a grace period if a person died or was released from imprisonment at any time within the period of 1 year preceding the effective date of the 1993 amendatory act, but that grace period is not applicable here.

### 3. Prosecutorial Immunity

On its face § 1983 admits no immunities, but the United States Supreme Court has

consistently recognized that substantive doctrines of privilege and immunity may limit the relief

available in § 1983 litigation.  See Imbler v. Pachtman, 424 U.S. 409, 417-419, 96 S.Ct. 984, 47

L.Ed.2d 128 (1976); Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

Because § 1983 liability for damages would "prevent the vigorous and fearless performance of

the prosecutor's duty that is essential to the proper functioning of the criminal justice system,"

Imbler, 424 U.S. at 427-428, prosecutors are absolutely immune from liability under § 1983

arising out of their role in the judicial system.  See Imbler, 424 U.S. at 417-419.  The burden is

on the official seeking protection to prove that absolute immunity is justified.  Spurlock v.

Thompson, 330 F.3d 791, 796 (6th Cir. 2003).

The scope of prosecutorial immunity under Imbler is wide, enveloping all prosecutorial

functions "intimately associated with the judicial phase of the criminal process."  Imbler, 424

U.S. at 430, 96 S.Ct. at 994.  See also Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct.

2606, 125 L.Ed.2d 209 (1993) ("Searching for clues and corroboration that might give [the

prosecutor] probable cause to recommend that a suspect be arrested" is not protected by absolute

immunity, but "the professional evaluation of the evidence assembled by the police" is so

protected. (internal quotation marks omitted)); Burns v. Reed, 500 U.S. 478, 487 & n. 6, 111

S.Ct. 1934, 114 L.Ed.2d 547 (1991) (holding that absolute immunity is appropriate for claims

based on a prosecutor's appearance at a probable cause hearing); Ireland v. Tunis, 113 F.3d

1435, 1446-47 (6th Cir. 1997) ("Absolute prosecutorial immunity will attach to administrative or

investigative acts necessary for a prosecutor to initiate or maintain a criminal prosecution.");
Campbell v. Patterson, 724 F.2d 41 (6th Cir. 1983) (holding that representation of the state at the
pre-trial conference, motion hearings, and plea bargain negotiations are "intimately associated
with the judicial phase of the criminal process" and entitled to absolute immunity); Stefaniak v.
State of Mich., 564 F.Supp. 1194, 1197 (D.C. Mich. 1983) (Hillman, J.) (holding that, once
criminal charges have been filed, the handling of evidence, as well as contacts with police and
witnesses pertaining to such evidence, qualifies as part of the pursuit and presentation of the
State's case and hence qualifies for Imbler immunity).

  The policy underlying the grant of absolute immunity is invoked even when the acts and
omissions of the prosecutor deprive a criminal defendant of his constitutional right to a fair trial
(as where a prosecutor knowingly suppressed Brady[22] material which would exonerate
defendant, Hilliard v. Williams, 540 F.2d 220, 221 (6th Cir. 1976), or knowingly uses perjured
testimony, Imbler, 424 U.S. at 427-431, as long as the conduct involves the decision to initiate,
the initiation and/or the prosecution of a criminal proceeding.

  Here, plaintiff alleges that Collins violated his constitutional rights at two hearings where
Collins was the prosecuting attorney.  (Complaint, §§ 72, 79)  According to plaintiff, Collins
"maliciously" sided with Pollard and argued against the issuance of bond first hearing while
failing to object to other misconduct at both hearing.  However, even accepting plaintiff's
allegations as true, the claims against Collins all involves the arguments she made or did not
make during hearings held before a judge regarding plaintiff's probation.  Those actions all took

---

[22]Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

-21-

place during court and they were clearly done as part of Collins' role as an advocate. Consequently, Collins is entitled to absolute immunity and the claims against her should be dismissed.

Plaintiff argues that Collins is not entitled to absolute immunity because there was no probable cause to hold the hearings in the first place. In support of that argument, plaintiff cites to Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209 (1993) and Spurlock v. Thompson, 330 F.3d 791 (6th Cir. 2003), with particular emphasis on the statement in Buckley that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Buckley, 509 U.S. at 274. However, both Buckley and Spurlock applied the standard from Imbler discussed above and those two cases only involved determinations that a prosecutor's investigatory actions did not entitle the prosecutors in those two cases to absolute immunity. See Buckley, 509 U.S. at 273-274 (holding that prosecutors' alleged misconduct, when endeavoring to determine whether bootprint at scene of crime had been left by suspect, was an investigatory and administrative function, rather than prosecutorial function, for which prosecutors were entitled to only qualified immunity in suspect's subsequent § 1983 suit); Spurlock, 330 F.3d at 799-800 (holding that the prosecutor's alleged retaliatory conduct after the trial was completed was like the administrative and investigative acts for which prosecutors have been held not to be entitled to absolute immunity.) In this case, Collins did no investigating and neither Buckley nor Spurlock applies. Collins' appearance at court, and the arguments she did or did not make, were done as part of her role as an advocate and she is, therefore, entitled to absolute immunity as to the claims against her.

-22-

### 4. Form of Complaint

Defendants Ribitschun, Pollard, Cilibraise, and Hughes argue that plaintiff's complaint should be dismissed because it is deficient under the federal rules. First, those defendants argue that the complaint is too long. Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement[s] of the claim showing that the pleader is entitled to relief" while plaintiff's complaint is over ninety pages long and it contains over 150 pages of exhibits. However, plaintiff is a *pro se* litigant and this court has a duty to accord him "the benefit of a liberal construction of [his] pleadings and filings." Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999). In light of that liberal construction, this court finds that plaintiff's complaint satisfies the requirements of Fed. R. Civ. P. 8(a)(2).

Defendants also argue that plaintiff's complaint should be dismissed because plaintiff failed to be specific in his allegations and they are unable to file a proper response to it. However, defendants' arguments are more properly the subject of a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e)[23] and they failed to make such a motion. Moreover, as described above, Ribitschun, Cilibraise, Pollard, and Hughes were in fact able to file pleadings responsive to plaintiff's complaint.

---

[23]Fed. R. Civ. P. 12(e) provides: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."

**5. Eleventh Amendment Immunity**

Defendants Ribitschun and Cilibraise argue that plaintiff's claims against them in their

official capacities must be dismissed in light of their immunity under the Eleventh Amendment

to the United States Constition.  As argued by those defendants, and conceded by plaintiff,  the

Eleventh Amendment does bar plaintiff's claims against them to the extent they are sued in their

official capacities.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another state, or by
> Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars suits

in federal court against a state and its departments or agencies unless the state has waived its

sovereign immunity or unequivocally consented to be sued.  See Pennhurst State Sch. & Hosp. v.

Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v. Govorchin, 463

F.3d 518, 524 (6th Cir. 2006).[24]  "Whether a suit against State officials in their official capacity

is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or

'prospective' relief'."  Doe, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past

---

[24]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the Federal Government brings the lawsuit. Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation.  Ernst, 427 F.3d at 358.  None of these exceptions are applicable in this case.

violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case.  See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737.  Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants.  Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself.  Doe, 21 F.3d at 737.  The State of Michigan, however, has not consented to civil rights suits in federal court.  See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003).  Therefore, to the extent plaintiff's claims against officials are against them in their official capacities, the claims are barred by the Eleventh Amendment.

### 6. Judicial Immunity

It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions.  Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Mann v. Conlin, 22 F.3d 100, 103 (6th Cir. 1994) (A judge performing his judicial functions is entitled to immunity from a suit seeking monetary damages.).  Moreover, the Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C. § 1983.  Briscoe v. LaHue, 460 U.S. 325, 334, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Pierson, 386 U.S. at 554-55, 87 S.Ct. 1213.  In fact, judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice.  Pierson, 386

U.S. at 554, 87 S.Ct. 1213; see also Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

"However, judicial immunity does not apply if the judge's activities were 'non-judicial' in nature or if the judge's actions are performed without any jurisdiction to do so." Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004) (citing Stump v. Sparkman, 435 U.S. 349, 362-63, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). In Stump, the Supreme Court established a two-prong test to determine whether an act is "judicial." Stump, 435 U.S. at 362. First, the court must consider whether the act in question is a function that is "normally performed by a judge." Stump, 435 U.S. at 362. The Sixth Circuit has referred to this inquiry as the functional approach. Brookings, 389 F.3d at 617. Under this inquiry, a court is required to examine the nature and function of the act, not the act itself. Brookings, 389 F.3d at 617. The Supreme Court reformulated this inquiry in Mireles by establishing that, even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. Mireles, 502 U.S. at 13.

Second, in determining whether an act is "judicial," the court must assess whether the parties dealt with the judge in his or her judicial capacity. Mireles, 502 U.S. at 12. In examining the functions normally performed by a judge, the Sixth Circuit has recognized that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. Barrett v. Harrington, 130 F.3d 246, 255 (6th Cir. 1997) (citing Antoine, 508 U.S. at 435-36, 113 S.Ct. 2167). Conversely, whenever an action taken by a judge is not an adjudication between the

-26-

parties, it is less likely that it will be deemed judicial.  Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994).

The Supreme Court has held that the term "jurisdiction" is to be broadly construed to effectuate the purposes of judicial immunity.  Stump, 435 U.S. at 356.  As such, a judge acts in the clear absence of all jurisdiction "only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides."  Johnson v. Turner, 125 F.3d 324, 334 (6th Cir. 1997).  See also King v. Love, 766 F.2d 962, 966 (6th Cir. 1985) ("[a] judge acts in the clear absence of all jurisdiction if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides.").  "Acts done 'in the clear absence of all jurisdiction' for which no immunity is afforded, should be distinguished from those actions in 'excess of jurisdiction' which fall within the ambit of immunity protection.  Brookings, 389 F.3d at 623 (quoting Barnes, 105 F.3d at 1122).  Thus, a judge of a court of general jurisdiction is absolutely immune from an action for damages if he exceeds his authority in resolving a matter over which his court has subject matter jurisdiction.  See Stump, 435 U.S. at 357-59 (judge immune even though he exceeded his authority in ordering a woman to undergo an involuntary sterilization); Bradley v. Fisher, 80 U.S. 335, 352, 20 L.Ed. 646 (1871) (judge is immune even if he exceeds his authority either in labeling permissible conduct as criminal or in sentencing a person to greater punishment than provided by law).

Here, plaintiff appears to allege that Swartz violated plaintiff's constitutional rights by setting a sentencing date for a violation he found plaintiff not guilty of (Complaint, ¶ 49), having plaintiff taken into custody (Complaint, ¶ 63), setting a bond at $50,000 (Complaint, ¶ 72),

unlawfully imprisoning plaintiff from August 6 to August 31, 2004 (Complaint, ¶ 76), and by

denying plaintiff the right to attend a hearing on plaintiff's motion for discovery (Complaint, ¶¶

101-102).  Accepting those allegations as true, all of those actions clearly took place in the

context of judicial proceedings, they are functions normally performed by judges, and plaintiff

only dealt with Swartz in Swartz's judicial capacity.  Moreover, under the broad construction of

jurisdiction for purposes of judicial immunity, Swartz had jurisdiction to make his rulings.  Thus,

the claims against Swartz arise out of the performance of Swartz's judicial functions and he is

entitled to judicial immunity from this suit.  Pierson, 386 U.S. at 553-54; Mann, 22 F.3d at 103.

### 7. Public Defender Immunity

Defendants Jacobs and Graham argue that they are entitled to absolute immunity because

plaintiff's claims against them involve traditional functions associated with providing him

counsel in criminal proceedings, for which absolute immunity attaches.  As discussed above,

while § 1983 admits no immunities on its face, the Supreme Court has consistently recognized

that substantive doctrines of privilege and immunity may limit the relief available in § 1983

litigation.  See Imbler, 424 U.S. at 417-419; Pulliam, 466 U.S. at 528-529.  Section 1983

immunities are "predicated upon a considered inquiry into the immunity historically accorded

the relevant official at common law and the interests behind it."  Imbler, 424 U.S. at 421;

Pulliam, 466 U.S. at 529.  If an official was accorded immunity from tort actions at common law

when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's

history or purposes nonetheless counsel against recognizing the same immunity in § 1983

actions.  See Imbler, 424 U.S. at 424-429; Briscoe v. LaHue, 460 U.S. 325, 335-337, 103 S.Ct.

1108, 75 L.Ed.2d 96 (1983).

No immunity for public defenders, as such, existed at common law in 1871 because there

was, of course, no such office or position in existence at that time.  Tower v. Glover, 467 U.S.

914, 921, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).  Moreover, plaintiff alleges that Jacobs and

Graham conspired with the other defendants, who were various state officials, to deny plaintiff

his constitutional rights and the Supreme Court has expressly held that "[s]tate public defenders

were not immune from civil rights liability with regard to alleged intentional misconduct by

virtue of alleged conspiratorial action with state officials to deprive client of his constitutional

rights by securing his conviction."  Tower, 467 U.S. at 920-923.  Thus, to the extent Jacobs and

Graham argue that they are entitled to absolute immunity, their argument should be rejected.

In support of their argument that they are entitled to absolute immunity, Jacobs and

Graham cite to Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509

(1981).  However, the Supreme Court did not hold in that case that public defenders are entitled

to absolute immunity.  Rather, the Supreme Court dismissed the plaintiff's § 1983 claims against

a public defender because a public defender does not act under the color of state law when

performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.

Polk County, 454 U.S. at 325.  To the extent Jacobs and Graham argue that they are not state

actors, their argument must still be rejected because defense attorneys are state actors for

purposes of § 1983 if they engage in a conspiracy with state officials to deprive a plaintiff of his

constitutional rights.  See Tower, 467 U.S. at 920 (holding that, because an otherwise private

-29-

person acts "under color of" state law when engaged in a conspiracy with state officials to deprive another of federal rights, the plaintiff's allegations that his public defenders conspired with state officials were adequate allegations of conduct "under color of" state law for his § 1983 claim); Polk County, 454 U.S. at 324-325 (stating that, while a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, a public defender can act under the color of state law in other circumstances). See also Campbell v. Strong, 865 F.2d 1267 (table), 1267, 1988 WL 136549, *1 (6th Cir. 1988) (holding that, while the defendant attorney may be liable under § 1983 if he conspired with a state actor to deprive plaintiff of his civil rights, the plaintiff's allegation of such a conspiracy was merely a conclusion and was insufficient to support a claim under § 1983).[25]

**8. Quasi-Judicial Immunity**

Defendants Pollard and Hughes argue that, as probation officers, they are entitled to "quasi-judicial immunity" and that, consequently, plaintiff's claims against them are barred.

---

[25]"It is well-settled that conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir. 1987). See also Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory"). Without more, "mere conjecture and speculation that an agreement existed" makes a finding of a conspiracy impossible. Gutierrez, 826 F.2d at 1538. In this case, plaintiff alleged his conspiracy claim against Jacobs and Graham with a sufficient degree of specificity. Plaintiff identifies the purpose of the alleged conspiracy and the specific actions Jacobs, Graham, and the other defendants allegedly took in furtherance of that conspiracy. Therefore, while plaintiff's complaint does include broad language alleging conspiracy, it also contains enough factual details to support his claim.

Federal officers performing functions that are judicial in nature are entitled to quasi-judicial immunity.  Butz v Economou, 438 US 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Moreover, quasi-judicial immunity has been applied to probation officers performing duties to ensure that a probationer was complying with the terms of probation.  See Balas v. Leishman-Donaldson, 976 F.2d 733 (table), 1992 WL 217735 (6th Cir. Sept. 9, 1992).  In Balas, the Sixth Circuit panel found that a probation officer performing duties to ensure a probationer was complying with the terms of probation was entitled to quasi-judicial immunity.  Id. at *5. See also Loggins v. Franklin County, Ohio, 218 Fed. Appx. 466, 476-477 (6th Cir. 2007) (holding that the defendant was entitled to quasi-judicial immunity where all of his actions were related to ensuring that the plaintiff was complying with the terms of his probation, the defendant was working for a judge in the context of a judicial proceeding, and all of the defendant's actions were intimately associated with judicial proceedings); Timson v. Wright, 532 F.2d 552 (6th Cir. 1976) (holding quasi-judicial immunity shields chief probation officer from liability).  As explained by the panel in Balas:

> Federal officers, other than judges to whom a form of judicial immunity has been found to attach (quasi-judicial immunity), include hearing officers and administrative law judges. Butz v. Economou, 438 U.S. 478, 513 [98 S.Ct. 2894, 57 L.Ed.2d 895] (1978). The Court has also extended the defense to state prosecutors and state parole officers, but taken pains to point out that immunity will only cloak functions performed by such officers which are judicial in nature. Imbler v. Pachtman, 424 U.S. 409 [96 S.Ct. 984, 47 L.Ed.2d 128] (1976)....
>
> ... [W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [a defendant] was complying with the terms of his

> probation, they were performing a quasi-judicial function. To the
> extent [probation officers] were performing that function at the
> direction of the judge, they are entitled to quasi-judicial immunity.
> All of the same considerations that would apply to the judge apply
> to the probation officer. "The prospect of damage liability under
> section 1983 would seriously erode the officer's ability to carry out
> his independent fact-finding function and thereby impair the
> sentencing judge's ability to carry out his judicial duties." Demoran
> v. Witt, 781 F.2d 155, 157 (9th Cir.1986) (finding absolute
> immunity for probation officers). [Balas, 1992 WL 217735 at *5.]

Here, plaintiff appears to allege that Pollard violated plaintiff's constitutional rights by improperly submitting a bench warrant requests to Swartz (Complaint, ¶¶ 19-20, 75), improperly having plaintiff taken into custody for violating probation (Complaint, ¶ 29-30), lying while testifying at hearings (Complaint, ¶¶ 48-49, 63), refusing to take plaintiff's phone calls (Complaint, ¶ 50-54), and entering slanderous pre-sentence investigation reports (Complaint, ¶¶ 68, 83-84). With respect to Hughes, plaintiff appears to allege that Hughes violated plaintiff's constitutional rights by approving the improper bench warrant requests and slanderous pre-sentence investigation reports submitted by Pollard (Complaint, ¶¶ 68, 75, 83-84).

As discussed above, federal officers performing functions that are judicial in nature are entitled to quasi-judicial immunity. Butz, 438 US at 513. Pollard and Hughes were performing such functions and they are entitled to quasi-judicial immunity and dismissal of the claims against them. Just like in Balas and Loggins, the actions that plaintiff alleges those defendants to have taken, such as preparing pre-sentence reports, requesting bench warrants testifying at hearings, were directly related to ensuring that the plaintiff was complying with the terms of his probation and were intimately associated with judicial proceedings. Moreover, allowing plaintiff's claims to proceed would seriously erode probation officers' ability to carry out their

independent fact-finding function and would, thereby, impair the sentencing judge's ability to carry out his judicial duties.

### 9. Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, __U.S. __,129 S.Ct. 808, __ L.Ed.2d __ (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Defendants Cilibraise, Ribitschun, Minzey, and Blakney argue that they are entitled to qualified immunity and dismissal of the claims against them because they were not personally involved in any alleged constitutional violation.  To succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.  <u>Copeland v. Machulis</u>, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam).  A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  <u>See Turner v. City of Taylor</u>,  412 F.3d 629, 649 (6th Cir. 2005); <u>Hays v. Jefferson County, Ky.</u>, 668 F.2d 869, 874 (6th Cir. 1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  <u>Shehee v. Luttrell</u>,  199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).  Moreover, the Sixth Circuit held in <u>Shehee</u> that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  <u>Shehee</u>, 199 F.3d at 300.

With respect to Cilibraise and Ribitschun, plaintiff alleges that he filed a request for assistance and an Administrative Complaint over Pollard and Hughes' misconduct and that Cilibraise responded to that letter with the statement that he worked for Ribitschun and that no

administrative action would be taken against Pollard or Hughes.  (Complaint, ¶¶ 96, 98)[26]  Those

are the sole allegations against Cilibraise and Ribitschun and they are insufficient to allege

personal involvement.  As discussed above, a respondeat superior theory of liability or a theory

of liability based on the denial of an administrative grievance or the failure to remedy the alleged

constitutional violation is not cognizable under 42 U.S.C. § 1983, and a plaintiff must show, at

the minimum, that the official at least implicitly authorized, approved, or knowingly acquiesced

in the unconstitutional conduct of the offending officers.  Turner, 412 F.3d at 649; Shehee,  199

F.3d at 300.  Plaintiff relies solely on such improper theories of liability in his claims against

Cilibraise and Ribitschun and those defendants are entitled to qualified immunity.

    With respect to Minzey, plaintiff alleges that, when he was taken to the Washtenaw

County Jail on August 5, 2004, he was given was given a list of the rules enforced by Minzey

and that, as part of that list, there was a rule that any inmate represented by legal counsel could

not use the jail's law library.  (Complaint, ¶ 64)  Plaintiff also alleged that he requested access to

the law library on numerous occasions, but he requests were always denied on the basis of the

jail's policy.  (Complaint, ¶¶ 70, 82)  Given those allegations, and the liberal reading afforded

pro se pleadings, plaintiff appears to have adequately alleged personal involvement by Minzey

by claiming that Minzey denied him access to the jail law library.

    However, Minzey is still entitled to qualified immunity on the basis that he was not

involved in any constitutional violation because plaintiff failed to state a claim against him

---

[26]In his response to the motion Ribitschun was part of, plaintiff identified other letters
that he claims he wrote Ribitschun and that went unanswered (D/E #59, pp. 28-29).  However,
no such allegations are part of the complaint.

involving any constitutional violation.  While plaintiff claims that Minzey violated his constitutional rights by denying him access to the jail law library, jails are not constitutionally required to provide such access to inmates represented by legal counsel.  As found by the Supreme Court, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (emphasis added). See also Knop v. Johnson, 977 F.2d 996, 1003 n. 5 (6th Cir. 1992) (noting that the Sixth Circuit, "like other courts of appeals, has always understood the Supreme Court to have meant what it said in holding that prisoners must be provided adequate law libraries 'or' adequate assistance from persons with legal training."); Penland v. Warren County Jail, 759 F.2d 524, 531 n. 7 (6th Cir. 1985) ( en banc ) ("Prisoners may not dictate to the state the method by which access to the courts will be assured.").

With respect to Blakney, plaintiff alleges that, while he wrote two letters to Blakney, Graham's direct supervisor, regarding Graham's allegedly ineffective assistance of counsel, and that Blakney's only response was that Graham was under her direct supervision and providing effective representation.  (Complaint, ¶¶ 71, 73, 81)  However, like with the claims against Cilibraise and Ribitschun, plaintiff's claim against Blakney should be dismissed because he fails to allege that Blakney at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.  Turner, 412 F.3d at 649; Shehee,  199 F.3d at 300.

-36-

**10. Challenging Fact or Duration of Confinement**

Defendants Ribitschun, Pollard, Cilibraise, and Hughes argue that plaintiff's claims should be dismissed because he is improperly challenging the fact or duration of his confinement in a § 1983 suit rather than under the applicable habeas corpus statutes. The United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see also Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). To recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render conviction or sentence invalid, a § 1983 plaintiff must prove that conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by federal court's issuance of writ of habeas corpus. Heck, 512 at 486-487. Consequently, a § 1983 action is barred when a state prisoner challenges the fact or duration of his confinement, and seeks either "immediate release from prison," or the "shortening" of his term of confinement. Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d. 253 (2005); quoting Preiser, 411 U.S. at 482. With respect to such types of relief, Congress has determined that habeas corpus is the appropriate and exclusive remedy for state prisoners attacking validity of fact or length of their confinement. Preiser, 411 U.S. at 489.

Here**,** plaintiff argues that he is not challenging the validity of his sentence, just the false arrest and imprisonment for the July 13, 2004 violation and the malicious prosecution thereof, as well as the false arrest and imprisonment from August 5, 2004 to the arraignment on November 18, 2004.  (D/E #59, p. 24)  Moreover, plaintiff also provided, as an exhibit to his complaint, a transcript  of a hearing before Swartz on July 22, 2004 in which Swartz found that there was not a preponderance of evidence supporting that finding that plaintiff violated his probation on June 23, 2004 and June 24, 2004.  (Transcript, July 22, 2004; attached as Exhibit 3 to Plaintiff's Complaint)  Consequently, plaintiff's allegations against Pollard and Hughes arising from the issuance of the June 25, 2004 warrant should be allowed to proceed.  However, neither the complaint nor its exhibits assert that plaintiff's later probation violation or sentence have been overturned, and, therefore, plaintiff is barred from bringing his other claims against Ribitschun, Pollard, Cilibraise, and Hughes in this § 1983.  As discussed above, the exclusive and appropriate remedy for those claims would be a writ of habeas corpus.  Preiser, 411 U.S. at 489; Wolff, 418 U.S. at 554; Heck, 512 U.S. at 481; Edwards, 520 U.S. at 648.

### B. Summary Judgment

### 1. Standard of Review

Defendants Bergett, Ribitschun, Pollard, Cilibraise, and Hughes move for summary judgment pursuant to Fed. R. Civ. P. 56.  Fed. R. Civ. P. 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106

S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his

pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

### 2. Ribitschun, Pollard, Cilibraise, and Hughes

Ribitschun, Pollard, Cilibraise, and Hughes argue that no genuine issue of material fact

exists with respect to the civil conspiracy claim against them and they are entitled to judgment as

a matter of law. A civil conspiracy is an agreement between two or more persons to injure

-39-

another by unlawful action, but express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy and each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003); Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985).  "All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."  Hooks, 771 F.2d at 943-944.  Moreover, the Sixth Circuit has acknowledged that because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, ... circumstantial evidence may provide adequate proof of conspiracy."  Weberg v. Franks, 229 F.3d 514, 528 (6th Cir. 2000) (alteration in original).

As discussed above, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Matsushita, 475 U.S. at 587.  Defendants can meet their initial burden by identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Here, Pollard, Hughes, Cilibraise and Ribitschun have met their initial burden of demonstrating the absence of a genuine issue of material fact by pointing out the lack of evidence supporting plaintiff's claims of a civil conspiracy against him.  With respect to Pollard and Hughes, defendants assert that Pollard filed petitions and reports as part of his job and that Hughes approved those filings as part of his job, and there is simply no evidence

-40-

linking them in a conspiracy to deny plaintiff his rights.  As to Cilibraise and Ribitschun,

defendants note that their only involvement was answering a letter initiated by the plaintiff and

there is no evidence of any agreement to deprive the plaintiff of any of his rights.

Given that defendants met their initial burden of demonstrating the absence of a genuine

issue of material fact, plaintiff "must come forward with specific facts showing that there is a

genuine issue for trial" in order to survive summary judgment.  Matsushita, 475 U.S. at 587.

However, in this case, plaintiff does not address defendants' summary judgment arguments in his

response or provide any evidence demonstrating that there is a genuine issue of material fact

with respect to his civil conspiracy claim against Pollard, Hughes, Cilibraise and Ribitschun.

Consequently, those defendants are entitled to summary judgment.

### 3. Bergett

Plaintiff alleges that, while he sent a letter to defendant Bergett on September 26, 2007,

requesting that Bergett take administrative action against Pollard and Hughes, Bergett failed to

respond to that letter.  (Complaint, ¶ 100)  In his motion for summary judgment, Bergett asserts

that he had retired prior to plaintiff sending him any letter and, therefore, he did not receive

plaintiff's letter or have any role in the alleged constitutional violations.  In support of his

assertion, Bergett provides an affidavit in which he states that, on September 26, 2007, he had

been retired almost six months.  (Affidavit of Patrick Bergett, ¶¶ 3-4; attached as Exhibit I to

Bergett's Motion for Summary Judgment)  Plaintiff does not dispute that affidavit or provide any

evidence contradicting it.  Therefore, no genuine issue is in dispute with respect to plaintiff's

claim against Bergett and Bergett is entitled to judgment as a matter of law.

**V.  Conclusion**

For the reasons discussed above, the court recommends that all of defendants' motions be **GRANTED** and that this case be dismissed.

With respect to the arguments for dismissal, this court specifically finds that (1) all of plaintiff's claims are barred by the applicable statute of limitations except for plaintiff's claims that Cilibraise violated plaintiff's constitutional rights on September 20, 2007, by refusing to take administrative action against Pollard and Hughes, Swartz violated plaintiff's constitutional rights on September 25, 2007, by denying plaintiff the right to attend a hearing on a motion for discovery, and Bergett violated plaintiff's constitutional rights by failing to respond to plaintiff's September 26, 2007 letter requesting that Bergett taken administrative action against Pollard and Hughes; (2) Collins is entitled to prosecutorial immunity; (3) plaintiff's complaint satisfies the requirements of Fed. R. Civ. P. 8(a)(2); (4) Ribitschun and Cilibraise are entitled to Eleventh Amendment Immunity with respect to the claims against them in their official capacities; (5) Swartz is entitled to judicial immunity; (6) Jacobs and Graham are not entitled to immunity because they are public defenders; (7) Pollard and Hughes are entitled to quasi-judicial immunity; (8) Cilibraise, Ribitschun, Minzey, and Blakney are entitled to qualified immunity; and (9) except for plaintiff's allegations against Pollard and Hughes arising from the issuance of the June 25, 2004 warrant, his claims are improperly challenging the fact or duration of his confinement.

With respect to the arguments regarding summary judgment, this court specifically finds that (1) Pollard, Hughes, Cilibraise and Ribitschun are entitled to summary judgment as to

plaintiff's conspiracy claim and (2) Bergett is entitled to summary judgment as to all claims against him.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan_____
Virginia M. Morgan
United States Magistrate Judge


Dated: June 12, 2009

-43-

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on June 12, 2009.

<u>s/J. Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan